# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ERIK B. CHERDAK,

    Plaintiff,

    v.

SEAN L. McKIRDY and
ROBERT NUTINI,

    Defendants.

Civil Action No. TDC-19-1246

## MEMORANDUM OPINION

Plaintiff Erik B. Cherdak has filed this self-represented civil action against Defendants Sean L. McKirdy and Robert Nutini asserting a variety of state law claims. Pending before the Court is Defendants' Joint Motion to Dismiss the Second Amended Complaint. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

### I.     The Assignment and Settlement Agreement

This case arises out of a business relationship gone sour. On December 12, 2012, Cherdak, a Maryland resident, entered into an agreement ("the Assignment") with Fitistics, LLC ("Fitistics"), a Connecticut company co-founded by McKirdy and Nutini, both Connecticut residents. Under the Assignment, where Cherdak, an attorney, had agreed to prepare numerous patent applications on behalf of Fitistics, Fitistics assigned its ownership of the rights to various software programs ("the Works") to Cherdak. In turn, Cherdak agreed to pay Fitistics 65 percent of all proceeds from the use of the rights to the Works. The Assignment was signed by Cherdak

and McKirdy, in his role as President and Chief Executive Officer ("CEO") of Fititics, and provided that it "shall be construed in accordance with, and all actions arising hereunder shall be governed by, the laws of the State of Maryland, USA." Assignment ¶ 10, Mot. Dismiss Ex. 1, ECF No 36-5; *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (citation omitted)). In the Assignment, Fititics expressly represented that it was "the exclusive owner of all right, title, interest, and all intellectual property rights in and to the Works." Assignment ¶ 4B. Cherdak alleges that Defendants also gave him express, written assurances that Fititics owned the Works.

With the Assignment and Defendants' assurances in hand, Cherdak began filing and litigating multiple copyright infringement actions based on his newly-acquired rights to the Works. Cherdak identifies three such suits: *Cherdak v. Core Industries, LLC*, filed in the United States District Court for the Eastern District of Virginia on January 15, 2013; *Cherdak v. KoKo*, filed in the same court on September 3, 2013; and *Cherdak v. ISCAN2D Technologies, LLC*, filed on April 29, 2016.

The *Core Industries* case eventually settled after several months of litigation, culminating in a settlement agreement ("the Settlement Agreement"), parts of which have been produced to the Court. Cherdak alleges that he eventually learned that Defendants had stolen computers and trade secrets from Core Industries's predecessor-in-interest, and that Core Industries filed counterclaims based on these facts. In the Settlement Agreement, Cherdak and Defendants agreed to license the Works to Core Industries. As part of this licensing, Fititics, Nutini, McKirdy, and Cherdak all "represent[ed] and warrant[ed]" that they had "full right, power, and authority to grant the License." Settlement Agreement ¶ 8.2, Second Am. Compl. ("SAC") Ex. 1, ECF No. 34-2.

According to Cherdak, as part of the Settlement Agreement, he licensed to Core Industries patents that he owned separately from the Works, and he alleges that Defendants encouraged him to do so to end the case.

Cherdak also alleges that he engaged in a series of discussions with Defendants about the Settlement Agreement.  In particular, Cherdak points to two conversations he had with McKirdy in Maryland, one at Cherdak's home in Gaithersburg, Maryland and another at the National Harbor Hotel in Prince George's County, Maryland, where McKirdy was staying.  Cherdak alleges that in these conversations, McKirdy, at times with Nutini participating by telephone, specifically represented that Fitistics—and, as a result of the Assignment, Cherdak—owned the Works and had the right to license them.  These conversations mirrored other discussions in which, Cherdak alleges, Defendants represented that Fitistics—and now Cherdak—owned the Works, including an email following the Settlement Agreement in which McKirdy wrote that "[as] President/CEO of Fitistics (and after discussion with co-founder Bob Nutini), I take the position that I have authority to have Fitistics enter into the executed settlement agreement."  June 10, 2013 Email, SAC Ex. 2, ECF No. 34-3.

Cherdak now alleges that all of these representations by Defendants as to Fitistics's ownership of the Works—and, as a consequence, Cherdak's ownership of the same—were false. He alleges that at least one other entity, an independent contractor for Fitistics, actually authored the works.  He also claims that Defendants deleted the copyright notices included within the Works by the original authors and inserted false copyright notices of their own, actions that he asserts Defendants had no right to take.  It is Defendants' alleged series of misrepresentations about the ownership of the Works that Cherdak asserts "make up the core of operative facts that give rise to the claims in this action."  SAC ¶ 21.

## II.     Previous Litigation

On February 4, 2016, Fitistics filed suit in the United States District Court for the Eastern District of Virginia against Cherdak, alleging breach of contract, breach of fiduciary duty, conversion, and fraud. *Fitistics, LLC v. Cherdak* ("*Cherdak I*"), No. 16-0112-LO-JFA, 2018 WL 4059375, at \*2 (E.D. Va. Aug. 23, 2018); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (allowing courts to take judicial notice of matters of public record in this procedural posture). The claims arose from Cherdak's conduct in relation both to the Assignment and to other dealings he had with Fitistics. *Fitistics*, 2018 WL 4059375, at \*2-3, \*6. Cherdak responded by filing counterclaims for breach of contract, fraud, intentional interference with contractual relations and prospective economic advantage, copyright infringement, negligent misrepresentation, and constructive fraud. *Id.* at \*2. Cherdak was granted summary judgment on Fitistics's breach of fiduciary duty claim, and the matter was set for trial. *Id.* On December 6, 2016, the case was stayed because Cherdak had filed for bankruptcy. *Id.*

On April 28, 2017, while the stay and bankruptcy proceeding continued, Cherdak filed a separate lawsuit against Fitistics and McKirdy, *Cherdak v. McKirdy* ("*Cherdak II*"), No. 17-0500 (E.D. Va. Apr. 28, 2017), also in the Eastern District of Virginia, relating to a separate Patent Rights Assignment Agreement ("PRAA") between Cherdak and Fitistics. In that case, he asserted claims of fraud in the inducement, a violation of Virginia consumer protection law, and defamation. On August 15, 2017, Cherdak's fraud and consumer protection claims were dismissed, but his defamation claim was not. *Cherdak II*, No. 17-0500, 2017 WL 11501875, at \*1 (E.D. Va. Aug. 15, 2017). On September 25, 2017, the case was consolidated with *Cherdak I.* Order at 5, *Cherdak II*, No. 17-0500 (E.D. Va. Sept. 25, 2017) (ECF No. 167).

4

After a three-day bench trial on the consolidated cases (collectively, "*Cherdak I*") from April 30, 2018 to May 2, 2018, *Cherdak I*, 2018 WL 4059375, at *1, the court issued a series of factual findings and legal conclusions.   Among other things, the court found that Cherdak had fraudulently induced Fitistics to enter into both the Assignment and the PRAA, because he "routinely lied by commission and omission during the full length of his relationship with Fitistics."   *Id.* at *7.   For example, Cherdak lied to Fitistics by claiming, in advance of the Assignment, that he had prosecuted patent applications for Fitistics during 2012 when, in fact, he had not.   *Id.* at *2.   The court credited McKirdy's testimony that had he known that Cherdak had not prosecuted the patent applications, he would not have entered into the Assignment.   *Id.* at *5. The court also found that after the Assignment was executed, Cherdak breached it by entering into numerous license agreements relating to the Works, lying to conceal those licenses, and failing to pay Fitistics its share of the proceeds under the Assignment as well as the PRAA.   *Id.* at *7.

The court also made findings relating to Cherdak's counterclaim for copyright fraud based on fraudulent inducement.   First, the court found that Cherdak had drafted the Assignment and, before agreeing to it, had "used his expertise in computer science to parse the code written for Fitistics by ESI, a contracted vendor, and drafted copyright registration applications and assignments of rights in the code from ESI to Fitistics."   *Id.* at *3.   Based in part on this finding, the court concluded as follows:

> Cherdak also alleged at trial that Fitistics fraudulently induced him into entering the [Assignment] by not disclosing that code within the copyrighted works may have had other copyright notices embedded within and by not disclosing that ESI, the company that produced the code based on Fitistics's specifications, still had an ownership interest.   In other words, he alleges he received less than he was entitled to under the CAA because of Fitistics's fraud.   This theory was unpled in any of Cherdak's complaints or answers filed with the Court.   Even had it been properly pleaded, the argument is vitiated by the facts of the case—most obviously that Cherdak has a computer science degree, parsed the code at issue, directed the internal copyright notices to be changed, and himself drafted most of the

[Assignment].   The evidence plainly refutes any allegation that Fitistics or Sean McKirdy engaged in copyright fraud.

*Id.* at *7 (citations omitted).   The court found in favor of Fitistics and McKirdy on all claims and counterclaims.   *Id.* at *10.   On November 20, 2019, the United States Court of Appeals for the Fourth Circuit affirmed the district court's decision.   *Fitistics, LLC v. Cherdak*, 785 F. App'x 116, 117 (4th Cir. 2019) (per curiam).

## III.   Procedural History

Cherdak filed the present case on April 29, 2019.   In the currently operative Second Amended Complaint, Cherdak raises several claims.   First, he argues that Defendants committed fraudulent inducement by falsely representing to him that Fitistics owned the Works independently, that Fitistics could properly convey them to Cherdak through the Assignment, and that Cherdak could then license them to others, in order to cause him to litigate various copyright infringement actions.   Second, he asserts breach of contract and breach of warranty claims, arguing that Defendants' alleged misrepresentations about the true ownership status of the Works breached the Settlement Agreement.   Third, he asserts detrimental reliance and promissory estoppel claims, again relying on Defendants' misrepresentations regarding the ownership of the Works.   Fourth, he alleges a claim of conspiracy to commit fraud, based on the claim that Defendants together made false representations to Cherdak about the ownership status of the Works that caused him to enter into the Settlement Agreement.   Fifth, Cherdak asserts that Defendants committed the tort of unjust enrichment based on the alleged misrepresentations relating to the ownership of the Works.   Finally, Cherdak asserts a separate claim for declaratory relief, based on Defendants' same misrepresentations.

## DISCUSSION

Defendants raise several arguments in their Motion to Dismiss.  First, they argue that this Court lacks personal jurisdiction over them, both as a matter of constitutional due process and under Maryland's long-arm statute.  Second, they argue that the prior litigation in the Eastern District of Virginia bars Cherdak's suit here as a matter of both *res judicata* and collateral estoppel. Third, they argue that Cherdak's suit is barred by Maryland's statute of limitations.  Finally, they argue that Cherdak has failed to plead the necessary elements of his claims.  They also argue that Cherdak should be sanctioned for "abuse of the judicial system, frivolous filings, and false information being offered to a court," Mot. Dismiss at 25, ECF No. 36-2, and that the Complaint should be dismissed as "Too Verbose and Prolix," *id.* at 28.

## I.      Legal Standards

Because Defendants have asserted arguments about both personal jurisdiction and the merits of Cherdak's claims, their Motion is filed pursuant to both Federal Rule of Civil Procedure 12(b)(2) and Rule 12(b)(6).  Under Rule 12(b)(2), it is the plaintiff's burden to establish personal jurisdiction.  *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).  To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's jurisdiction.  *Id.*  In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor.  *Id.*  The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion.  *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763-64 (D. Md. 2009).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is

plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.     Personal Jurisdiction

Where jurisdiction is a threshold issue that must be resolved before considering the merits, the Court first addresses the claim that the Court lacks personal jurisdiction over Defendants. Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the long-arm statute of the state in which the court sits.  *Id.*  The Court addresses these requirements in sequence.

### A.     Due Process

Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may be exercised over a party upon a showing that the party has sufficient "minimum contacts" with the forum state such that "maintenance of the suit [in the state] does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In assessing the presence of minimum contacts, courts distinguish between two types of personal jurisdiction:  general and specific.  General, or all-purpose, jurisdiction offers a path to personal

jurisdiction when the suit brings "causes of action arising from dealings entirely distinct from" the defendant's contacts with the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Specific, or case-linked, jurisdiction provides authority "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

In order for a court to exercise specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court determines if it has specific jurisdiction over an entity by considering "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

Here, one case in particular guides the Court's application of these three prongs. In *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit addressed whether an Indian company was subject to personal jurisdiction in Virginia. *Id.* at 287. The company's contacts with Virginia were fairly straightforward: a representative of the company had visited Virginia twice, the company had "corresponded and collaborated" with the Virginia plaintiff for an "extended period," and the company had entered into a settlement agreement with the plaintiff. *Id.* at 294. Based on these factors, the court found that the company had "purposefully availed itself of the privilege of

transacting business in" Virginia and satisfied the first prong. *Id.* at 295. The court also found that the second prong was satisfied because the company representative's visit to Virginia had resulted in a licensing agreement that had in turn, because of alleged infringement of that agreement, resulted in the settlement agreement, which had itself in turn, because of violations of *that* agreement, resulted in the dispute before the court. *Id.* at 295-96. Finally, the court found the exercise of personal jurisdiction constitutionally reasonable based on a consideration of the burden to the company, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Id.* at 296. As to the burden, although the fact that the company was headquartered in India posed some issues, it was not especially burdensome to litigate in Virginia because it had the ability to secure counsel to litigate in Virginia, and it was reasonably foreseeable that the company could be haled into a Virginia court. *Id.* at 296. The court also found that Virginia had a strong interest in adjudicating the rights of its citizens such as the plaintiff, especially where the claims were based on Virginia law, and that the plaintiff had a strong interest in vindicating its rights. *Id.* at 296-97. Consequently, the court concluded that the exercise of jurisdiction over the defendant company comported with due process. *Id.* at 297.

Guided by these principles, the Court finds that all three prongs are satisfied here. On the first prong, both McKirdy and Nutini purposefully availed themselves of conducting business in Maryland. They both corresponded with Cherdak, who lives in Maryland, over the phone and by email repeatedly over the course of their business relationship. Both McKirdy and Nutini entered into the Settlement Agreement with Cherdak, and McKirdy separately entered into the Assignment with Cherdak on behalf of Fitistics, the company that Nutini co-founded. In the Assignment, the parties provided that it "shall be construed in accordance with, and all actions arising hereunder shall be governed by, the laws of the State of Maryland, USA." Assignment ¶ 10. Finally,

10

McKirdy physically visited Cherdak in Maryland one or two times to discuss the Works and the *Core Industries* case.  According to Cherdak, in Spring 2013, he had in-person discussions with McKirdy at Cherdak's home in Gaithersburg, Maryland in which McKirdy, with Nutini on the telephone, represented to Cherdak that based on the Assignment, Cherdak owned the Works and could license the rights to them.  Cherdak further asserted that he negotiated terms of the Settlement Agreement with McKirdy at the National Harbor Hotel in Maryland.  Although Defendants urge the Court to rely on McKirdy's declaration instead of Cherdak's unverified Complaint on this point, that finely sliced declaration does not actually disclaim that McKirdy made such representations about the ownership of the Works during a 2013 visit to Maryland.  It instead denies different statements allegedly made at different times:  McKirdy denies stating in Maryland that Fitistics had itself developed the Works, negotiating the 2012 Assignment in Maryland, and executing the Settlement Agreement in Maryland.  *See* McKirdy Decl. ¶¶ 8-9, 14, Mot. Dismiss Ex. 1, ECF No. 36-3.  The Court will therefore rely on Cherdak's allegations on this point.

To be sure, McKirdy's and Nutini's contacts are not on all fours with those in *CFA Institute*.  In that case, there were two separate physical visits to the forum state, and the business relationship lasted longer.  *CFA Inst.*, 551 F.3d at 294-95.  Here, however, there were at least two business agreements formed between the parties instead of just one.  In fact, counting the 2013 PRAA that is otherwise not at issue here, there were actually three agreements.  *Cherdak I*, 2018 WL 4059375, at *3. Moreover, the Assignment expressly stated that it was governed by Maryland law.  Although a choice-of-law provision is not dispositive of personal jurisdiction, it is at least "one factor that a court may take into account."  *Consulting Eng'rs Corp.*, 561 F.3d at 281; *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011) (holding that a choice-of-law provision

selecting the law of the forum state "provide[s] further evidence of a defendant's 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985))).  On these facts, the Court finds that both Defendants have purposefully availed themselves of doing business in Maryland and so satisfy the first prong.

The Court also finds that Cherdak has met the second prong in that his suit arises out of or is related to Defendants' contacts with the forum state.  McKirdy's alleged statement in Maryland, with Nutini participating by telephone, that Cherdak owned the Works and could license them is one of the alleged misrepresentations that "make up the core of operative facts that give rise to the claims in this action."  SAC ¶ 21.  Likewise, where Cherdak has alleged that he negotiated the Settlement Agreement with McKirdy in Maryland, that contact directly relates to one of the agreements at issue in this case.  The second prong is therefore satisfied.

The third prong, whether the Court's exercise of jurisdiction over Defendants would be constitutionally reasonable, is likewise satisfied here.  This requirement "ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent."  *CFA Inst.*, 551 F.3d at 296 (quoting *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001)).  As to the burden on Defendants, their claims of significant burden are unconvincing.  In *CFA Institute*, the court held that haling a defendant from much further afield—namely, India—into a Virginia court was not "particularly burdensome," especially where, like here, the defendant had proved capable of obtaining counsel to represent it and, based on its business dealings with a forum citizen, could reasonably foresee litigation in the forum state.  *CFA Inst.*, 551 F.3d at 296.  Notably, Defendants have already litigated related cases successfully in the United States District Court for the Eastern

12

District of Virginia in Alexandria, Virginia, within 20 miles of this Court.  Finally, just as Virginia

had "a valid interest in the resolution of the grievances of its citizens and businesses, particularly

when they potentially involve issues of Virginia law," so too does Maryland have a valid interest

in enforcing claims brought under Maryland law by a Maryland citizen, Cherdak, who himself has

an interest in having his rights vindicated in this case.  *Id.* at 297.

Having determined that all three prongs are met, the Court finds that exercising personal

jurisdiction over Defendants in this case comports with due process and turns next to consider

whether it also comports with Maryland's long-arm statute.

**B.      The Maryland Long-Arm Statute**

The  Maryland  long-arm  statute,  Md. Code  Ann.,  Cts. & Jud. Proc. § 6-103 (LexisNexis

2013),  authorizes  the  exercise  of  personal  jurisdiction  to the limits  permitted  by the Due Process

Clause of the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293

F.3d 707, 710 (4th Cir. 2002); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567,

576 (Md. 2005).  There may be cases, however, in which personal jurisdiction comports with

federal due process but which present factual scenarios outside the scope of the long-arm statute.

*Krashes v. White*, 341 A.2d 798, 804 (Md. 1975); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540,

545 (D. Md. 2006) ("[T]o the extent that a defendant's activities are covered by the statutory

language [of the long-arm statute], the reach of the statute extends to the outermost boundaries of

the due process clause." (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.

Supp. 116, 118-19 n.2 (D. Md. 1995))).  Thus, the jurisdictional analysis under the long-arm statute

does not simply collapse into the due process analysis.  *See Mackey v. Compass Mktg., Inc.*, 892

A.2d 479, 493 n.6 (Md. 2006) (stating that although the "long arm statute is coextensive with the

13

limits of personal jurisdiction set by the due process clause," it is not "permissible to . . . dispense with analysis under the long-arm statute").

The Maryland long-arm statute authorizes jurisdiction over a party who, directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; or

(5) Has an interest in, uses, or possesses real property in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).  In order to find personal jurisdiction, the Court must determine that at least one of these bases for jurisdiction has been satisfied.  *See id.* § 6-103(a).

Cherdak asserts personal jurisdiction under the first of these categories, which applies when the defendant "[t]ransacts any business or performs any character of work or service in the State." *Id.* § 6-103(b)(1).  "Transacting business pursuant to section (b)(1) of the long-arm statute requires actions [that] culminate in purposeful activity within the State." *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014) (quoting *Bahn v. Chi. Motor Club Ins. Co.*, 634 A.2d 63 (Md. Ct. Spec. App. 1993)).  This subsection, however, "does not require the defendant to have been physically present in Maryland." *Id.*  "[E]ven a single contact with the forum can satisfy the transaction of business standard in subsection (b)(1)." *Id.*

In *CoStar Realty Information, Inc. v. Meissner*, 604 F. Supp. 2d 757 (D. Md. 2009), the defendant had initiated contact with the plaintiffs who were in Maryland and then "entered into a

licensing agreement, sent transmissions via e-mail, contacted Plaintiffs by phone, and repeatedly accessed Plaintiffs' Maryland-based servers." *Id.* at 766. This conduct, the court held, was sufficient to constitute transacting business in Maryland. *Id.* Likewise, the court in *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co.*, 617 A.2d 1125 (Md. Ct. Spec. App. 1993), held that where the defendant had called the plaintiff to discuss purchasing the plaintiff's goods, negotiated with the plaintiff over several weeks, eventually entered into a contract with the plaintiff, and sent a down payment, all while the plaintiff was in Maryland, the defendant had transacted business in Maryland. *Id.* at 1129. Similarly, Defendants repeatedly discussed the Works, over the phone and by email, with Cherdak, a Maryland resident, and entered into multiple contracts with him. On at least one occasion, McKirdy traveled to Maryland to meet with Cherdak and engaged in negotiations that led to one of the contracts, the Settlement Agreement, which McKirdy later executed and sent to Cherdak in Maryland. Under these circumstances, the Court finds that Defendants have transacted business within Maryland for purposes of section 6-103(b)(1). Where the exercise of personal jurisdiction over Defendants comports with both due process and Maryland's long-arm statute, the Motion will be denied as to personal jurisdiction.

## III. Collateral Estoppel

Defendants assert, based on the decision in *Cherdak I*, that Cherdak's claims are precluded by both *res judicata* and collateral estoppel. Specifically, they assert that the court's finding in *Cherdak I* that Fitistics and McKirdy did not misrepresent the status of their claim to the Works or fraudulently induce him to enter into the Assignment precludes Cherdak's claims here, which are all premised on this same alleged misrepresentation. *Cherdak I*, 2018 WL 4059375, at *7.

Before addressing whether either doctrine applies here, the Court must decide whether state or federal principles apply. The preclusion claims are primarily based on the litigation of a

15

fraudulent inducement claim asserted in conjunction with Cherdak's counterclaims in *Cherdak I*. Where the counterclaims included a claim for copyright infringement under 17 U.S.C. § 504(c)(2), Cherdak invoked the court's jurisdiction under 28 U.S.C. § 1338, which provides federal district courts with original jurisdiction over copyright and trademark claims.   The rest of his counterclaims, including his claim for fraudulent inducement at issue here, were therefore brought within the court's purview through supplemental jurisdiction.  *See* 28 U.S.C. § 1367 (2018).  The Fourth Circuit has held that, where the previous decision that purportedly has preclusive effect was issued by a federal court addressing a state law claim through its supplemental jurisdiction, "federal common law governs the preclusive effect of the federal court's disposition of that claim," and "[t]he federal rule of decision in such cases is to apply state preclusion law, unless the state preclusion law is incompatible with federal interests."  *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019).   The Court finds no incompatibility between the preclusion law of Virginia, the applicable state law for the relevant claim, and any federal interests.  *Id.* ("Here, we discern no reason why Virginia preclusion law is incompatible with federal interests.").  The Court therefore applies Virginia preclusion law.[1]

---

[1]   The Court notes that the choice of law makes no material difference because while the federal collateral estoppel requirements differ from the Virginia requirements in that there is no mutuality requirement and there is a separate requirement that the precluded party have had a full and fair opportunity to litigate the matter in the prior proceeding, *Westmoreland Coal Co. v. Sharpe ex rel. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012), Cherdak received such an opportunity in *Cherdak I*, where, as discussed below, the court specifically considered and rejected Cherdak's assertion of fraudulent inducement based on fraud relating to the copyrights at issue in the Assignment. Although the court struck certain briefs for failure to comply with its formatting requirements, *see e.g.*, June 25, 2018 Order, *Cherdak I*, No. 16-0112 (E.D. Va. June 25, 2018) (ECF No. 346), Cherdak specifically advanced this argument at trial and in an accepted post-trial brief, and the court specifically addressed in its written opinion the key issue here—Cherdak's awareness of the ownership status of the Works.  *See Cherdak I*, 2018 WL 4059375, at *7; *see, e.g.*, Cherdak Post-Trial Br. at 1-2, *Cherdak I*, No. 16-0112 (E.D. Va. June 28, 2018) (ECF No. 347).

The Court begins—and ends—its analysis with collateral estoppel.  In Virginia, collateral estoppel "precludes parties to a prior action from litigating in a subsequent action any factual issue that was actually litigated and essential to a valid, final judgment in the prior action."  *Scales v. Lewis*, 541 S.E.2d 899, 901 (Va. 2001).  Virginia courts require:

> (1) the parties to the prior and subsequent proceedings, or their privies, must be the same, (2) the factual issue sought to be litigated actually must have been litigated in the prior action, (3) the factual issue must have been essential to the judgment in the prior proceeding, and (4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied.  In addition to these elements, there also must be "mutuality," *i.e.*, a litigant cannot invoke collateral estoppel unless he would have been bound had the litigation of the issue in the prior action reached the opposite result.

*Id.* (quoting *Angstadt v. Atlantic Mutual Ins. Co.*, 457 S.E.2d 86, 87 (Va. 1995)).  The party asserting the defense of collateral estoppel has the burden to establish that these requirements are met and to introduce the record of the prior proceeding.  *Id.*

### A.      Identity of Parties

The parties in *Cherdak I* and *Cherdak II*, which were consolidated and resulted in the opinion in *Cherdak I*, were Cherdak, Fitistics, and McKirdy.  Nutini was not a party.  Collateral estoppel may nevertheless apply to him if he was in privity with either Fitistics or McKirdy.  "[P]rivity exists where a party's interest is so identical with another that representation by one party is representation of the other's legal right."  *Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 715 (Va. 2019) (quoting *Lee v. Spoden*, 776 S.E.2d 798 (Va. 2015)).  "Privity as used in the context of res judicata or collateral estoppel, *does not embrace relationships between persons or entities*, but rather it deals with a person's *relationship to the subject matter of the litigation*."  *Id.* (quoting *Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 48 (4th Cir. 1990)).

"Virginia courts typically find privity when the parties share a contractual relationship, owe some kind of legal duty to each other, or have another legal relationship such as co-ownership." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Tr.*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011). Here, Nutini shares such a relationship with McKirdy and Fititics. Nutini and McKirdy were the co-founders of Fititics. Where Cherdak himself has alleged that Nutini was engaged in—and operated as a team with McKirdy in—numerous discussions following the Assignment and before the Settlement Agreement, which Nutini signed, it is clear that Nutini remained actively involved in decisions relating to Fititics during the time period at issue in *Cherdak I* and *Cherdak II*. Accordingly, where Nutini's company sued Cherdak for breaching the Assignment and Cherdak in turn filed counterclaims against Nutini's company and Nutini's business partner alleging that he had been fraudulently induced into entering the Assignment in the first place, Nutini's interests were fully aligned with those of Fititics and McKirdy. Nutini was therefore in privity with Fititics and McKirdy for purposes of *Cherdak I*.

### B.    Actually Litigated

The next requirement is that the relevant factual issue must have been actually litigated in the previous case. The inquiry here "must always be as to the point or question actually litigated and determined in the original action; not what *might* have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 630 (Va. 2018) (quoting *Eason v. Eason*, 131 S.E.2d 280, 282 (Va. 1963), *abrogated on other grounds by Perry v. Commonwealth*, 701 S.E.2d 431 (Va. 2010)). The key factual issue here is whether "Fititics fraudulently induced [Cherdak] into entering the [Assignment] by not disclosing that code within the copyrighted works may have had other copyright notices embedded within and by not disclosing that ESI, the company that produced the code based on Fititics's

18

specifications, still had an ownership interest." *Cherdak I*, 2018 WL 4059375, at *7.  Although

Cherdak had not explicitly asserted this claim in his pleadings in *Cherdak I*, and the pre-trial brief

in which he asserted it was stricken by the court, Cherdak specifically asserted this claim in his

opening statement at trial when he stated that he had "pled fraud in the inducement relative to both

void assignment agreements in this case" and that "Fitistics made representations and warranties

in the [Assignment] about Fitistics' alleged 100 percent ownership that Fitistics had no ability to

make or honor in the first place." 4/30/18 Trial Tr. at 31-32, Reply Mot. Dismiss Ex. 13, ECF No.

41-10.  He also testified during the trial about his fraudulent inducement claim when he recounted

the allegedly fraudulent statement by McKirdy that Fitistics "own[ed] the code" and could "sell it

to you" and testified that he "relied on that representation."  5/2/2018 Trial Tr. at 464-466, 468,

Reply Mot. Dismiss Ex. 12, ECF No. 41-9.  He then argued to the court that these allegedly false

representations were "relevant to my claim for fraud in the inducement . . . against Fitistics" which

was based on the representations "that they didn't have the right to make . . . that they owned the

[W]orks." *Id.* at 471.  Finally, in his post-trial brief he advanced this same claim by including a

section in which he advanced the argument that "Fitistics fraudulently induced Mr. Cherdak to

enter [the Assignment] [o]n December 12, 2012 by lying about ownership in certain software and

copyrights." Cherdak Post-Trial Br. at 2, Reply Mot. Dismiss Ex. 14, ECF No. 41-11.

    The court specifically found that Cherdak had asserted this fraudulent inducement claim at

trial and then proceeded to reject it based on the finding that "the argument is vitiated by the facts

of the case." *Cherdak I*, 2018 WL 4059375, at *7.  The *Cherdak I* court expressly found that

Cherdak had written the Assignment, that he had "used his expertise in computer science to parse

the code written for Fitistics by ESI, a contracted vendor, and drafted copyright registration

applications and assignments of rights in the code from ESI to Fitistics." *Id.* at *3.  Accordingly,

the court concluded that where "Cherdak has a computer science degree, parsed the code at issue, directed the internal copyright notices to be changed, and himself drafted most of the [Assignment]," the "evidence plainly refutes any allegation that Fitistics or Sean McKirdy engaged in copyright fraud." *Id.* at *7. The issue of whether Fitistics fraudulently induced Cherdak to enter into the Assignment was thus actually litigated and decided in *Cherdak I.*

## C.     Essential to the Judgment

Next, "the factual issue sought to be litigated . . . must have been essential to the prior judgment." *TransDulles Ctr., Inc. v. Sharma*, 472 S.E.2d 274, 275 (Va. 1996). "[I]f a judgment in the prior case is supported by either of two findings, neither finding can be found essential to the judgment." *Hately*, 917 F.3d at 778 (quoting *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 328 (4th Cir. 2004)) (applying Virginia law). Here, there is no alternative finding relied upon in *Cherdak I* to reject the fraudulent inducement component of Cherdak's counterclaim. Where the *Cherdak I* court's sweeping judgment in favor of Fitistics and McKirdy "on all claims and counterclaims in this case" necessarily relied in part on its finding that "[t]he evidence plainly refutes any allegation that Fitistics or Sean McKirdy engaged in copyright fraud," *Cherdak I*, 2018 WL 4059375, at *7, it was essential to the judgment.

## D.     Final Judgment

Next, "[a] judgment sought to be used as the basis for the application of the doctrine must be a final judgment." *Faison v. Hudson*, 417 S.E.2d 302, 304 (Va. 1992). "[A] judgment is not final for the purposes of res judicata or collateral estoppel when it is being appealed or when the time limits fixed for perfecting the appeal have not expired." *Id.* at 305. Here, the *Cherdak I* court issued a final judgment on Cherdak's counterclaims, *Cherdak I*, 2018 WL 4059375, at *10, and Cherdak's appeal of that judgment has been resolved. *See Fitistics, LLC v. Cherdak*, 785 F. App'x

116 (4th Cir. 2019) (per curiam).  Because there is no longer a pending appeal of *Cherdak I*, the Court finds that it was a final judgment for collateral estoppel purposes.

### E.    Mutuality

Finally, there must be mutuality of estoppel.  The doctrine of mutuality bars a litigant from invoking collateral estoppel unless the litigant "would have been bound had the litigation of the issue in the prior action reached the opposite result."  *Hately*, 917 F.3d at 780 (quoting *Scales*, 541 S.E.2d at 901).  Although generally "[w]hen a litigant was not a party to the prior litigation, it would not have been bound had an opposite result been reached," *id.* (quoting *Angstadt v. Atl. Mut. Ins. Co.*, 457 S.E.2d 86, 88 (Va. 1995)), a litigant who was not a party to the prior litigation will be bound if it was in privity with a party to the prior litigation, *Ferebee v. Hungate*, 63 S.E.2d 761, 764 (Va. 1951).  Here, as discussed above, Nutini was in privity with Fitistics and McKirdy in *Cherdak I*, so he would have been bound had the case turned out differently.  Consequently, both he and McKirdy, who was a party to the prior litigation, satisfy mutuality.

### F.    Application

Having found that Defendants may invoke collateral estoppel, the Court must determine which of Cherdak's various claims are precluded by its application.  Because each of Cherdak's claims depends on his assertion that Defendants fraudulently misrepresented the ownership of the Works to him, the Court finds that all of Cherdak's claims are precluded.

Cherdak's first claim is for fraudulent inducement based on alleged misrepresentations about the ownership of the Works.  For this claim, Cherdak must show that he "reasonably relied" on Defendants' alleged misrepresentations.  *Goldstein v. Miles*, 859 A.2d 313, 331 (Md. Ct. Spec. App. 2004) ("Just as a plaintiff must show that he reasonably relied upon the defendant's promises to receive benefit-of-the-bargain damages, so must he show such reliance to recover for fraud or

negligent misrepresentation."); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536 (D. Md. 2011). The findings in *Cherdak I*, however, make clear that Cherdak could not have reasonably relied on any alleged misrepresentations by Defendants about the ownership of the Works, as the court found no fraudulent inducement where he was aware of the potential ownership issues and in fact directed the alteration of the copyright notices in the Works. Consequently, the collateral estoppel effect of *Cherdak I* precludes Cherdak's fraudulent inducement claim.

Second, Cherdak asserts a breach of contract and breach of warranty claim. In this claim, Cherdak appears to allege that Defendants breached the Settlement Agreement "immediately upon execution" because it contained "ongoing and executory representations and warranties" about the ownership of the Works that were false and upon which Cherdak had relied in entering into the Settlement Agreement. SAC ¶¶ 85-86. As alleged, this claim depends on Cherdak's assertion that he "relied on Defendant's representation[s]" and that "[h]ad he been informed as to the true ownership status of the Works," he would not have "commenced litigation for copyright infringement." SAC ¶ 84. Here, as discussed above, the *Cherdak I* court specifically found that Cherdak was not fraudulently misled about the ownership of the Works. Moreover, Cherdak's claim is facially inconsistent with the *Cherdak I* court's finding that Cherdak himself drafted the copyright registration applications and assignments of rights from ESI to Fitistics. *Cherdak I*, 2018 WL 4059375, at *3. Where Cherdak cannot succeed on this claim in light of the findings in *Cherdak I,* collateral estoppel also bars this claim.

Third, Cherdak asserts a claim of detrimental reliance and promissory estoppel. In Maryland, promissory estoppel is applicable where (1) there has been a clear and definite promise; (2) the promisor has a reasonable expectation that the offer will induce action or forbearance on

the part of the promisee; (3) the promise does induce actual and reasonable action or forbearance by the promisee; and (4) the promise causes a detriment which can only be avoided by the enforcement of the promise. *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). Again, where *Cherdak I* found that Defendants did not fraudulently induce action by Cherdak based on claims about the ownership of the Works and that Cherdak was aware of the ownership issues, Cherdak cannot establish any reasonable action taken as a result of any promise about the ownership of the Works. In similar circumstances, courts have rejected promissory estoppel claims. *See, e.g.*, *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 451-52 (D. Md. 2012) (rejecting a promissory estoppel claim based on a discharged employee's argument that her employers had promised her job stability where the employee was "on actual notice that her employment was at will" such that there was no "reasonable reliance"). Thus, where *Cherdak I* precludes a finding of reasonable reliance on any promises about the ownership of the Works, collateral estoppel precludes any claim of promissory estoppel.

Fourth, Cherdak asserts a claim of conspiracy to commit fraud. "[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995) (quoting *Alexander v. Evander*, 650 A.2d 260, 265 n.8 (Md. 1994)). Where the Court has already found that Cherdak's fraudulent inducement claim is barred by collateral estoppel, his conspiracy claim based on the same theory of fraudulent misrepresentations about the ownership of the Works likewise fails.

Fifth, Cherdak alleges a claim of unjust enrichment. Unjust enrichment has three elements: first, "[a] benefit conferred upon the defendant by the plaintiff"; second, "[a]n appreciation or knowledge by the defendant of the benefit"; and third, "[t]he acceptance or retention by the

defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citing *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). Here, Cherdak asserts that the inequity requirement is met by Defendants' misrepresentations regarding the ownership of the Works. Again, *Cherdak I* held that Cherdak was not fraudulently misled about the ownership of the Works and that "[t]he evidence plainly refutes any allegation that Fitistics or Sean McKirdy engaged in copyright fraud." *Fitistics*, 2018 WL 4059375, at *7. Where Cherdak's theory of inequity in this case was squarely rejected, the Court finds that his unjust enrichment claim is precluded by collateral estoppel.

Finally, Cherdak appears to assert an independent claim of declaratory relief. But declaratory relief is, as the name suggests, a form of relief, not an independent cause of action. Where Cherdak has no viable causes of action through which to seek declaratory relief, the Court will dismiss this claim as well. Where all claims will be dismissed based on collateral estoppel, the Court need not address Defendants' remaining arguments for dismissal.

## IV. Sanctions

Defendants seek sanctions against Cherdak, including an order that Cherdak not be permitted to file a new complaint in this Court against Fitistics or Defendants without leave of the Court. Although it appears that Defendants' discussion in their brief relating to sanctions was aimed at securing dismissal of the case as a sanction, to the extent that Defendants were also seeking monetary sanctions under Federal Rule of Civil Procedure 11, any such request will be denied because there is no evidence that Defendants followed the procedures in Rule 11(c)(2), including filing a separate motion and serving it on Cherdak with a request for withdrawal of the Complaint. *See* Fed. R. Civ. P. 11(c)(2). As for the request for a pre-filing injunction requiring

leave of the Court to file new complaints, the Court will deny that request but will note that in the event that Cherdak files any new complaints against Fititics or Defendants relating to the same subject matter as this case, *Cherdak I*, or *Cherdak II*, it would likely grant Defendants leave to file a Rule 11 motion for sanctions in such a new case.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED.  A separate Order shall issue.


Date:  July 27, 2020                                  /s/ *Theodore D. Chuang*     
                                                    THEODORE D. CHUANG
                                                    United States District Judge